# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MIDWEST RENEWABLE ENERGY, LLC, a Nebraska limited liability company, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| MARQUIS ENERGY – WISCONSIN, LLC, a Delaware limited liability company, and GATX CORPORATION, a New York corporation, | ) Case No. 13-cv-2175<br>)<br>)<br>) |
| Defendants. | ) Judge Sharon Johnson Coleman<br>)<br>) |
| GATX CORPORATION, a New York corporation, | )<br>) |
| Counterclaimant, | )<br>) |
| v. | )<br>) |
| MIDWEST RENEWABLE ENERGY, LLC, a Nebraska limited liability company, | )<br>)<br>) |
| Counter-Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

On May 10, 2013, plaintiff Midwest Renewable Energy LLC ("MRE") filed a First Amended Complaint [53] alleging breach of a lease agreement and tortious interference with a business relationship against defendant GATX Corporation ("GATX"), and tortious interference with a contract and promissory estoppel against defendant Marquis Energy – Wisconsin LLC ("Marquis"). In an Order on December 18, 2013, this Court converted defendants' motions to dismiss to motions for summary judgment pursuant to Federal Rule of Civil Procedure 12(d) and allowed the parties time to conduct discovery and comply with Local Rule 56.1. Marquis now moves for summary

1

judgment on Counts III and IV of the First Amended Complaint. For the reasons set forth below, the motion is granted.[1]

**Background**

The following facts are undisputed.

*MRE/GATX Lease Agreement*

MRE is an ethanol producer. GATX leases railcars for transport. On January 1, 2005, MRE entered into a lease with GATX (the "Lease Agreement") under which MRE leased twenty railcars from GATX. The Lease Agreement provided for the lease of 10 railcars until 2017 and for the lease of the remaining 10 railcars until 2020. Under the Lease Agreement, MRE owed between $550.00 and $575.00 per month per railcar to GATX. The Lease Agreement required MRE to pay service fees to GATX on a monthly basis in an amount based on the Lease Agreement riders. The Lease Agreement states that the customer (MRE) shall not furnish, assign or subcontract the railcars or make any transfer or assignment of the Lease Agreement without GATX's prior written consent. The Lease Agreement also states that it:

> may not be amended, altered, or changed except by written agreement signed by the parties hereto [and] [n]o waiver of any provision of this Agreement or consent to any departure by [MRE] therefrom shall be effective unless the same shall be in writing signed by both parties and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given.

*MRE/Marquis Railcar Lease*

In early March 2012, Marquis, as sublessee, and MRE, as sublessor, entered into an agreement entitled "Railcar Lease." Under the Railcar Lease, MRE agreed to sublease the 20 railcars under the GATX/MRE Lease Agreement to Marquis for the sum of $1,200.00 per month, for two months. In the Railcar Lease, MRE represented that "it has the legal right and ability to lease the Railcars according to the terms of the [Railcar Lease] and has obtained all required approvals or

---

[1] GATX also moves for summary judgment. The Court will address that motion in a separate order.

2

authorizations required to effectuate [the Railcar Lease]." Shortly after executing the Railcar Lease, Marquis paid to MRE the entire amount due under the Railcar Lease.

On April 26, 2012, Troy Gavin, general manager of MRE, emailed Norm Anderson at Marquis, stating: "We have leased out cars and leased a lot of cars from various companies and on either side have never had to have written consent from GATX. I just read our lease agreement again and there is no provision requiring the master lessor to sign off on it." On or about April 30, 2012, Marquis and MRE entered into a second sublease agreement, entitled "Amendment to Railcar Lease." The Amendment to Railcar Lease provided for Marquis' sublease of the 20 railcars for six months, from May 12, 2012, to November 12, 2012, at the rate of $1,900.00 per car per month. After executing the Amendment to Railcar Lease, Marquis paid to MRE the entire amount due, $228,000.00 under the Amendment to Railcar Lease. In the Amendment to Railcar Lease MRE provided the covenant:

> that during the Extended Renewal Term, [MRE] shall:
> …
> b.  Make all payments required under any master lease to which the Railcars are subject;
> c.  Refrain from taking any action or non-action that will cause a default or other breach under any master lease to which the Railcars are subject; and
> d.  Provide prompt notice to [Marquis] of any notice of breach, default, or cancellation provided to [MRE] under any master lease to which the Railcars are subject.

Marquis and MRE executed both the Railcar Lease and the Amendment to Railcar Lease. Both the Railcar Lease and the Amendment to Railcar Lease were subleases of the 20 railcars that MRE had leased from GATX under the Lease Agreement. Marquis made all lease payments to MRE that were required under the terms of the Railcar Lease and the Amendment to Railcar Lease. MRE did not make rental payments under the Lease Agreement to GATX from January 2012 through July 2012.

3

*Assignment*

On or about June 26, 2012, Norm Anderson sent Troy Gavin an email asking what MRE planned to do with the 20 railcars Marquis was then subleasing from MRE. On or about June 27, 2012, Troy Gavin sent Norm Anderson an email proposing Marquis take an assignment of the Lease Agreement including payments to GATX pursuant to the Lease Agreement as well as additional payments to MRE. On August 1, 2012, Troy Gavin sent Norm Anderson an email indicating things had "turned south." Troy Gavin's August 1, 2012, email was the first time Norm Anderson learned that MRE had not obtained consent from GATX to sublease or assign the lease to the railcars. Prior to August 1, 2012, MRE did not disclose to Marquis that MRE did not make all payments under the Lease Agreement with GATX. Prior to August 1, 2012, MRE did not disclose to Marquis that GATX had not provided written consent to enter into the Railcar Lease or Amendment to Railcar Lease.

On or about August 3, 2012, Marquis received correspondence from GATX, informing Marquis that the Lease Agreement prohibits the assignment or subcontracting of the railcars or transfer or assignment of the Lease Agreement without prior written consent of GATX. In the August 3, 2012, correspondence with Marquis, GATX indicated that GATX had not consented to any sublease or assignment of the lease for the railcars. GATX informed MRE that it was in breach of the Lease Agreement. GATX informed MRE that it had until August 15, 2012, at 4:00 p.m. CST to cure any breach, or else GATX would deem the lease terminated and undertake recovery of the railcars. MRE did not make the payments identified by GATX in the August 3, 2012, correspondence. The August 3, 2012, correspondence from GATX was the first communication between Marquis and GATX about the 20 railcars.

During a telephone conversation with Troy Gavin on August 21, 2012, Norm Anderson indicated that Marquis was not interested in a lease extension requiring payment to MRE of

4

$285,000.00 and that he did not have the authority to offer any amount of money. MRE disputes Marquis' representation that Anderson never offered, or agreed to accept any offer, for Marquis to pay monetary consideration to MRE for any assignment of the MRE/GATX Lease Agreement in order to take over the lease for the railcars. MRE also disputes that Anderson did not have the authority to make or accept any such offer for Marquis to pay monetary consideration to MRE for any assignment of the MRE/GATX Lease Agreement. However, the record evidence to which MRE refers to show that the matter is in dispute is an uncorroborated self-serving affidavit from Troy Gavin and a copy of the Amendment to Railcar Lease signed by Anderson. The Amendment to Railcar Lease does not provide additional monetary consideration to MRE for the assignment, but only payment for the railcars. (See Marquis Statement of Material Facts, Anderson Affidavit, Ex. B, at ¶ 3; Dkt. 96-1 at 15). MRE contends that Marquis did not require a fully-executed written agreement for any railcar lease, including any potential assignment of a lease. However, MRE admits that a written agreement was executed after delivery of the railcars to Marquis. Marquis did not sign an agreement with MRE to take any assignment of the MRE/GATX lease for the railcars.[2] August 21, 2012, Marquis received a copy of a written notice from GATX to MRE terminating the Lease Agreement. MRE did not return Marquis' prepayment made pursuant to the Amendment to Railcar Lease.

MRE alleges breach of a lease agreement and tortious interference with a business relationship against GATX, and tortious interference with a contract and promissory estoppel against Marquis.

**Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper where the pleadings, depositions, admissions and affidavits demonstrate that there is no genuine issue as to any

---

[2] Although MRE denies this fact, this Court was unable to find the exhibits to which MRE referred and therefore the statement is deemed admitted.

material fact and that the movant is entitled to summary judgment as a matter of law. *Fed. R. Civ. P. 56(a); Celotex v. Catrett*, 477 U.S. 317, 324 (1986). When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F. 3d 763, 773 (7th Cir. 2005).

**Discussion**

Marquis moves for summary judgment on Counts III and IV of the First Amended Complaint. Marquis argues that the undisputed facts preclude MRE's claim of tortious interference because GATX properly terminated the Lease Agreement, MRE cannot establish breach of contract by Marquis, and MRE induced GATX to terminate the lease agreement, not Marquis. Further, Marquis argues that the undisputed facts do not support promissory estoppel because the parties' negotiations do not amount to an unambiguous promise, the statute of frauds bars MRE's alleged promise, and MRE cannot show that it reasonably relied on any promise.

1. *Tortious Interference*

Under Illinois law, a claim for tortious interference with contract requires: "(1) the existence of a valid and enforceable contract between the plaintiff and another, (2) the defendants' awareness of the contract, (3) the defendants' intentional and unjustified inducement of a breach of the contract, (4) subsequent breach of the contract caused by the defendants' wrongful conduct, and (5) damages." *Dopkeen v. Whitaker*, 399 Ill. App. 3d 682, 926 N.E.2d 794, 797 (1st Dist. 2010).

Marquis first argues that MRE cannot establish that GATX breached the Lease Agreement because GATX properly terminated the Lease Agreement after MRE's ongoing failure to pay for the railcars under the terms of the lease and MRE's failure to obtain written consent from GATX to sublease the railcars to Marquis. MRE contends that GATX breached the Lease Agreement by waiving strict compliance with the monthly payment requirements and then retracting that waiver

without providing adequate notice. MRE further contends that Marquis induced GATX to terminate the Lease Agreement.

The Lease Agreement between GATX and MRE states in Article 12 under Assignment/Subcontracting/Liens: "The cars shall be used exclusively in the service of [MRE], and [MRE] shall not furnish, assign or subcontract any car, or make any transfer or assignment of this agreement, without GATX's prior written consent…" (Dkt. 93-2). The following Article 13 provides for Remedies:

> If [MRE] shall fail to perform any of its obligations under this Agreement, GATX may (a) without notice or demand immediately terminate this Agreement with respect to any or all of the cars covered hereunder and thereafter take possession of any or all such cars; or (b) upon seven (7) days prior written notice to [MRE], change the term of this Agreement to a month-to-month term, subject to termination thereafter upon ten (10) days prior written notice from either party to the other, or (c) permit [MRE] to retain possession of any or all cars under this Agreement as the same may continue in force provided [MRE] shall, within five (5) days after written notice from GATX cure any and all defaults under this Agreement, and shall also, within said five (5) day period, provide to GATX adequate assurances (including collateral security) of future full performance of this Agreement, so that all amounts due hereunder shall promptly be paid by [MRE] to GATX when they shall become due, and that all covenants hereunder shall promptly performed by it in the manner provided herein.

MRE admits that it did not make payments to GATX under the Lease Agreement beginning in January 2012 until GATX gave notice of termination in July 2012. It is also undisputed that MRE did not obtain written consent from GATX to sublease the railcars to Marquis or to assign its rights under the Lease Agreement to Marquis. Therefore, MRE failed to perform its obligations under the express terms of Lease Agreement and GATX was entitled to terminate the Lease Agreement without notice or demand. *See Central States, Se. & Sw. Areas Pension Fund v. Kroger Co.*, 226 F.3d 903, 910 (7th Cir. 2000) (when a contract is unambiguous, the court may declare its meaning as a matter of law). GATX terminated the Lease Agreement as set forth under the express terms of the contract and therefore MRE cannot show the GATX was in breach of the Lease Agreement.

7

MRE argues that GATX waived strict compliance by not immediately demanding payment when MRE informed GATX that it was unable to make the rental payments. However, the Lease Agreement specifically provides that there can be no waiver of the terms absent a writing signed by both parties. The only writings in the record are a series of emails between MRE and GATX, wherein GATX notifies MRE that they are in default on payments and requests updates on MRE's payments. (*See* Dkt. 93-5). On Friday, March 23, 2012, Carmen Meece at GATX sent an email to Amy McFarland with MRE, stating "If you are having cash flow problems let me know and GATX will work out a payment plan to get the account current." (Dkt. 93-7). At the end of March Joan Kovacevich at GATX sent Troy Gavin an email stating: "Accounts Rec[eivable] is contacting me daily to determine how to proceed. I can work with you now and would like to do so." (Dkt. 93-8). All of these emails, however, suggest that GATX was seeking payment on the Lease Agreement and MRE kept assuring GATX it would pay. The record does not support an inference that GATX would not demand payment or terminate the Lease Agreement as it is permitted to do pursuant to the Lease Agreement without notice.

Even if this Court were to find that GATX had waived strict compliance with the contract, MRE still would be unable to demonstrate that Marquis induced GATX to terminate. On July 27, GATX sent MRE a letter stating that MRE was in default and owed $74,493.88 and that if payment in full was not made by August 10, 2012, then GATX may exercise any of its available remedies under the Lease Agreement. (Dkt. 93-14). On August 3, 2012, GATX sent both MRE and Marquis a letter informing Marquis that the Lease Agreement prohibits the assignment or subcontracting of the railcars or transfer or assignment of the Lease Agreement without prior written consent of GATX, and that GATX has not consented to sublease or assignment. (Dkt. 93-16). Moreover, it is undisputed that MRE, not Marquis, informed GATX of the potential assignment. Thus, even if the possible assignment of the Lease Agreement to Marquis were the catalyst for GATX to terminate

8

the Lease Agreement with MRE, there is nothing in the record to show that Marquis induced GATX to terminate the Lease Agreement. This Court finds that the undisputed facts demonstrate that MRE cannot establish tortious interference with a contract against Marquis.

   2. *Promissory Estoppel*

Marquis also moves for summary judgment as to Count IV of the First Amended Complaint, asserting promissory estoppel against Marquis claiming that in June and July of 2012, Marquis repeatedly promised to MRE that Marquis would pay approximately $300,000 to buy out MRE's rights under the Lease Agreement. "'[P]romissory estoppel is a doctrine under which the plaintiff may recover without the presence of a contract.'" *Newton Tractor Sales, Inc. v Kubota Tractor Corp.*, 233 Ill. 2d 46, 53, 906 N.E.2d 520, 329 Ill. Dec. 322 (2009) (quoting *Illinois Valley Asphalt, Inc. v. J.F. Edwards Construction Co.*, 90 Ill. App. 3d 768, 770, 413 N.E.2d 209, 45 Ill. Dec. 876 (1980)). In order to establish a claim for promissory estoppel, a plaintiff must prove that "(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Janda v. United States Cellular Corp.*, 961 N.E.2d 425, 443-444 (1st Dist. 2011) (quoting *Newton Tractor Sales, Inc. v Kubota Tractor Corp.*, 233 Ill. 2d 46, 51, 906 N.E.2d 520, 329 Ill. Dec. 322 (2009)).

      a. *Unambiguous Promise*

Marquis first argues that it did not make any promise to MRE, though they discussed the potential assignment of the Lease Agreement. Marquis asserts that the discussion of a potential assignment were merely negotiations, which cannot be interpreted as an unambiguous promise to MRE. This Court agrees.

MRE refers in a conclusory manner to Marquis' "repeated promise" to buy out MRE's rights under the Lease Agreement between MRE and GATX. However, MRE fails to support this assertion with adequate evidence. MRE refers to "proposals for assigning the Lease Agreement" and

9

Troy Gavin's self-serving affidavit in which he claims Marquis promised to buy out MRE's rights under the Lease Agreement with GATX. MRE also refers to a purported conference call between Marquis and GATX to which MRE was not a party. Further, MRE refers to a paragraph in its Statement of Additional Facts (paragraph 32) that does not exist. None of this purported evidence demonstrates a question of fact that Marquis made an unambiguous promise to pay MRE the alleged sum of approximately $300,000. The only proposal to contain a provision for payment to MRE from Marquis of $286,000 was sent from MRE to Marquis in response to Marquis having sent a proposed agreement that did not contain any provision for payment to MRE. Further, there is no evidence that Marquis ever agreed to pay MRE $286,000. The only reasonable inference to be drawn from the record is that Marquis and MRE were engaged in ongoing negotiations in an effort to reach an agreement on an assignment of the Lease Agreement.

### b. Statute of Frauds

Marquis further argues that even if such negotiations could be interpreted as an unambiguous promise, it would be barred by the statute of frauds. MRE contends that the statute of frauds does not apply because the assignment would be complete upon execution and therefore could be performed in less than a year.

Under Illinois law, promissory estoppel claims are subject to the statute of frauds. *Fischer v. First Chicago Capital Markets, Inc.*, 195 F.3d 279, 284 (7th Cir. 1999). Under Section 2A of the UCC, lease contracts are not enforceable unless: (1) the total payments to be made under the lease contract are less than $1,000 or (2) the lease is in writing and "signed by the party against whom enforcement is sought." 810 ILCS 5/2A-201(1). Where the statute of frauds applies, the general rule is that an assignment must likewise be in writing. *Dominion Inv. v. Yasechko*, 767 F. Supp. 1460, 1469 (N.D. Ind. 1991).

Here, since the statute of frauds applies to the underlying MRE/GATX lease agreement because more than $1,000 was at stake and the lease would have been performed until at least 2017, then the statute of frauds applies equally to the purported assignment. The undisputed evidence demonstrates that there is no writing sufficient to satisfy the statute of frauds. MRE relies on two emails and two draft agreements as evidence of a writing. The two emails from Norm Anderson at Marquis state: "Any news on the GATX cars?" and "Have not heard back from you on the 20 cars – any news?" The first draft agreement was sent by Marquis to MRE and did not contain any provision for payment to MRE, but it did request that MRE execute the draft. MRE responded with a draft agreement, revised by its counsel, which included a provision for payment of $286,000 to MRE. Neither of the drafts nor the emails satisfies the statute of frauds because the writing must have been "signed by the party against whom enforcement is sought" and "sufficient to indicate that a contract has been made between the parties." 810 ILCS 5/2A-201(1)(b). Furthermore, as case law relied on by MRE states that the writings must contain "the parties to a contract, the subject matter of the contract, and the price." *Cafcas v. De Haan & Richter, P.C.*, 699 F. Supp. 679, 686 (N.D. Ill. 1981). The proposals contain neither an agreed upon price nor are they signed by Marquis.

### c. Reasonable Reliance

Additionally, Marquis argues that MRE cannot show that it reasonably relied on any promise from Marquis because the terms of the Lease Agreement expressly prohibited MRE from assigning the lease without first obtaining written consent from GATX and the parties' course of dealing suggests that they would have fully executed any agreement reached as they had done on two previous occasions.

The Court finds that it would be manifestly unreasonable for MRE to rely on an assignment to Marquis of its Lease Agreement with GATX, knowing that the express terms of the Lease Agreement prohibit assignment without written consent from GATX. MRE does not dispute that

11

GATX did not provide written consent for an assignment. Moreover, the prior dealings of MRE and Marquis involve two subleases, which are fully executed written agreements that contain the terms and Marquis' agreement to pay. Thus, MRE cannot reasonably argue that its prior dealings with Marquis would support reliance on an unexecuted assignment. Finally, the only reasonable inference to be drawn from the undisputed evidence in the record demonstrates that Marquis and MRE were engaged in ongoing negotiations of a proposed assignment of the Lease Agreement rather than an unambiguous promise by Marquis to pay MRE. Accordingly, MRE is unable to establish a claim for promissory estoppel and Marquis is entitled to judgment as a matter of law.

**Conclusion**

Based on the foregoing, Marquis is entitled to judgment as a matter of law on Counts III and IV of the First Amended Complaint. This Court grants Marquis' motion for summary judgment.

IT IS SO ORDERED.

Date: September 16, 2014

Entered: _____

United States District Judge