# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MIDWEST RENEWABLE ENERGY, LLC, a Nebraska limited liability company, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| MARQUIS ENERGY – WISCONSIN, LLC, a Delaware limited liability company, and GATX CORPORATION, a New York corporation, | ) Case No. 13-cv-2175<br>)<br>)<br>) |
| Defendants. | ) Judge Sharon Johnson Coleman<br>)<br>) |
| GATX CORPORATION, a New York corporation, | )<br>) |
| Counterclaimant, | )<br>) |
| v. | )<br>) |
| MIDWEST RENEWABLE ENERGY, LLC, a Nebraska limited liability company, | )<br>)<br>) |
| Counter-Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

On May 10, 2013, plaintiff Midwest Renewable Energy LLC ("MRE") filed a First Amended Complaint [53] alleging breach of a lease agreement and tortious interference with a business relationship against defendant GATX Corporation ("GATX"), and tortious interference with a contract and promissory estoppel against defendant Marquis Energy – Wisconsin LLC ("Marquis"). In an Order on December 18, 2013, this Court converted defendants' motions to dismiss to motions for summary judgment pursuant to Federal Rule of Civil Procedure 12(d) and allowed the parties

1

time to conduct discovery and comply with Local Rule 56.1.[1] GATX therefore seeks summary judgment on Counts I and II of the First Amended Complaint. For the reasons set forth below, the motion is granted.[2]

**Background**

The following facts are undisputed. MRE is an ethanol producer. GATX leases railcars for transport. GATX and MRE entered a Rail Car Service Contract ("Lease") on January 1, 2005, that incorporated two riders, leasing railcars to MRE to transport ethanol. Paragraph 2 of the Lease requires MRE to pay GATX "the service charges set forth on the Riders attached to this Agreement." Paragraph 2 also mandates that service charges accrue monthly and the customer will receive monthly invoices, which must be made within fifteen days of the invoice. Paragraph 12 of the Lease prohibits MRE from assigning or subleasing the railcars without GATX's prior written consent. Paragraph 13 of the Lease provides "Remedies" and allows GATX, in the event that MRE failed to perform any of its obligations under the Agreement, to:

> (a) without notice or demand immediately terminate this Agreement with respect to any or all of the cars covered hereunder and thereafter take possession of any or all such cars; or …
> (c) permit [MRE] to retain possession of any or all cars under this agreement as the same may continue in force provided [MRE] shall, within five (5) days after written notice from GATX cure any and all defaults under this Agreement.

*Non-payment on Lease*

MRE stopped making monthly payments on the Lease in January 2012. GATX continued invoicing MRE each month for charges owed under the Lease.[3] GATX contacted MRE on January 13, 2012, regarding its then outstanding balance of $14,287.41. In response, MRE assured GATX

---

[1] GATX did not file a separate brief arguing summary judgment, but complied with LR 56.1 by filing statements of undisputed fact and responses to MRE's LR 56.1(b)(3) Statement Additional of Fact. This Court therefore treats GATX's arguments in support of its Motion to Dismiss as a memorandum in support of summary judgment.
[2] Marquis also moved for summary judgment. The Court granted that motion in a separate order (Dkt. 114).
[3] MRE denies this statement however it did not provide a pinpoint citation, Troy Gavin's affidavit does not contradict this statement, and MRE admits elsewhere in its response to GATX's LR 56.1 statement of material facts that GATX continued to notify MRE of its outstanding balance.

2

that it would catch up on its outstanding balance by March, and thereafter pay every invoice in full each month. MRE did not make the payment at the end of January. On February 3, 2012, GATX emailed MRE again and requested an update, and also inquired whether MRE's next payment would be double in light of the missed payment in January. MRE did not pay GATX in February. On March 1, 2012, GATX emailed MRE again, notified MRE that it was in default, and demanded payment of MRE's then outstanding balance of $18,993.88. MRE did not respond or remit payment. On March 6th, 13th, 15th, 2012, GATX again emailed MRE with notice of the past due amount. MRE did not respond to any of those emails. On March 16, 2012, GATX sent MRE an account statement reflecting a past due balance of $30,093.88. On March 23, 2012, GATX again emailed MRE, requesting payment status on the past due account. GATX also asked whether MRE was having cash flow problems and offered to work out a payment plan in order to get its account current. On March 28, 2012, Joan Kovacevich, an account representative at GATX, emailed Troy Gavin of MRE, stating: "I didn't receive a written update as we discussed yesterday. Will you please have someone write this up for me? Accounts Rec is contacting me daily to determine how to proceed. I can work with you now and would like to do so." (Dkt. 93-8). Troy Gavin responded that MRE was currently working on a restructuring and that MRE expected to resume making payments on its past due invoices.

*Sublease to Marquis*

Troy Gavin did not inform Joan Kovacevich that MRE had subleased GATX's railcars to Marquis Energy – Wisconsin LLC around March 3, 2012. MRE did not obtain GATX's written consent prior to subleasing the railcars to Marquis. The sublease was for two months at $1,200 per car per month, for a total of $48,000 for all 20 railcars. Marquis paid the entire $48,000 balance to MRE on or about March 12, 2012. MRE never informed GATX that it received a payment from Marquis nor did MRE pay any of the outstanding service charges under the Lease.

On April 12, 2012, Joan Kovacevich emailed Troy Gavin to request an update. Gavin informed her that MRE was still in a holding pattern. Kovacevich responded, stating that she was glad to hear MRE was preparing to restart the plant and that "banks work at their own pace. SLOW." At the time, MRE and Marquis were negotiating an extension of MRE's sublease to Marquis, which they executed on April 30, 2012. The Amendment to the Sublease extended Marquis' sublease for an additional six months at a rate of $1,900 per car per month payable in a single, lump sum payment of $228,000 due on or before May 4, 2012. MRE did not obtain GATX's prior written consent before entering into the Amendment to Sublease with Marquis nor did MRE inform GATX of the Amendment to the Sublease. MRE also never informed GATX of the $228,000 payment that Marquis tendered to MRE. MRE did not make any payments on its Lease Agreement with GATX. By May 2012, MRE had received a total of $276,000 from Marquis for subleasing GATX's railcars.

On July 11, 2012, Joan Kovacevich emailed Troy Gavin regarding MRE's outstanding balance, stating: "This is the balance that is due GATX. I didn't realize it was this high, please send me an email so I can begin to negotiate a resolution for you." (Dkt. 93-12). Gavin responded stating that MRE "would like to sublease these cars." *Id.* He did not mention that MRE had already subleased the cars to Marquis. On July 16, 2012, Kovacevich emailed Gavin stating: "Don't sublease the cars. I'm dealing with the internal group at GATX on the past due amounts." (Dkt. 93-13). In response, Gavin informed Kovacevich that "we don't have the means to pay for these cars… even a few of them." *Id.* On July 24, 2012, Kovacevich emailed Gavin, stating: "We will have a meeting on Friday [July 27, 2012] morning to discuss the sublease and the past due balance that is on the account. We will be in touch with you immediately upon the conclusion of the meeting with the final decision [regarding the sublease or assignment of the Lease Agreement to Marquis]."

*Termination of Lease*

>On July 27, 2012, GATX sent MRE a letter stating:
>
>Unless [MRE] cure such default by payment in full to GATX of $74,493.88 on or before August 10, 2012, GATX may exercise and or all of the remedies available to it under the Agreement for such default, including without limitation, the return to GATX of all cars currently leased to [MRE]. Additionally, please note that [MRE's] monthly service charge payment of $11,000, which is not included in the amounts described above, is due on August 15, 2012.

MRE did not remit payment of the past due balance by August 10, 2012, nor did MRE remit payment for its August rent on the railcars.

>On July 30, 2012, counsel for MRE responded to GATX's July 27, 2012, letter as follows:
>>The recent position taken by GATX with respect to its lease (titled "Car Service Contract") of railroad cars is of grave concern to MRE… MRE had extensive communications with you and appeared to be moving forward with GATX towards a mutually agreeable path which would satisfy all obligations under the lease agreement and return to both parties that to which they are entitled under the lease…
>>
>>The issue of demanding return of the cars was never mentioned in any of the discussions with GATX. MRE was apparently being lulled into a false sense of security that once GATX's general liability and financial security concerns were met, GATX would act reasonably and in good faith to enable MRE to perpetuate its business activities via an assignment of the lease.
>>
>>Because of GATX's unwarranted reversal of its position, MRE is placed in a dire financial condition.
>
>GATX discovered the sublease between MRE and Marquis and sent MRE a letter on August 3, 2012, stating that:
>>Section 12 of the [Lease] prohibits the furnishing, assignment or subcontracting of any railcar leased thereunder, as well as the transfer or assignment of the Lease, in all cases without prior written consent of GATX.
>>
>>You are hereby notified that GATX has neither consented to an assignment of the Lease, nor to the sublease of any or all of the 20 railcars leased thereunder, by [MRE] to [Marquis] or to any other entity. The Lease has been breached and unless it is restored to good standing by 4:00 pm Chicago time on August 15, 2012, GATX will

deem it terminated and undertake recovery of the subject railcars, expressly reserving all of its other rights and remedies under the Lease.[4]

MRE did not pay the outstanding service charges owed under the Lease nor did it cure its breach of the Lease stemming from the sublease. GATX sent MRE a letter on August 21, 2012, stating:

> We previously notified you by our letters dated July 27, 2012, and August 3, 2012, that [MRE] was in default under the [Lease] for (i) its failure to pay past due car services charges, which as of the date of this letter, is currently $85,593.88, and (ii) its purported attempt to sublease the railcars leased under the Agreement (the "Cars") to [Marquis] without the consent of GATX, as required under Section 12 of the Car Service Contract.
>
> This letter is formal notification that, notwithstanding being provided the opportunity to do so, [MRE] has failed to cure such defaults under the Agreement. Therefore, GATX is exercising its rights under Section 13 of the [Lease] and is terminating the Agreement effective as of 10:00 am CDT on August 21, 2012, and will be taking action to immediately repossess the cars.

*GATX/Marquis Agreement*

Beginning August 3, 2012, GATX began communicating with Marquis. MRE was not included in these communications. On the morning of August 14, 2012, GATX and Marquis had a conference call and discussed an assignment of MRE's Lease Agreement to Marquis. MRE was not involved in the discussion. On August 15, 2012, GATX sent Marquis and MRE a letter stating: "[a]s GATX and Marquis are currently discussing in good faith such proposed assignment, GATX hereby notifies [MRE] that the August 15th deadlines are hereby extended to August 17, 2012." On Friday, August 17, 2012, GATX and Marquis executed an assignment, which Marquis sent to MRE for execution. GATX and Marquis entered a lease agreement for railcars on August 22, 2012.

**Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper where the pleadings, depositions, admissions and affidavits demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. *Fed. R. Civ. P.*

---
[4] MRE denies that GATX was unaware of the sublease to Marquis until after July 27, 2012, but in support of that denial refers to an email from Joan Kovacevich from July 31, 2012, asking MRE if it had subleased the railcars to Marquis. (Dkt. 102 at ¶10, citing Dkt. 102-2 at Ex. 2).

56(a); *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F. 3d 763, 773 (7th Cir. 2005).

**Discussion**

1. *Breach of Lease*

GATX moves for summary judgment in its favor on Count I for breach of the lease agreement, arguing that the undisputed facts demonstrate that MRE, not GATX breached the Lease by subleasing the railcars without express written consent and failure to make the required payments on the lease. GATX further argues that the Lease expressly forbids oral waivers and the undisputed evidence shows that GATX did not waive its right to terminate the Lease despite allowing MRE temporary forbearance. To show a breach of contract under Illinois law, a plaintiff must show that (a) a contract exists between plaintiff and defendant, (b) plaintiff performed her obligations under the contract, (c) defendant did not perform his obligations under the contract, and (d) damages resulted from the breach. *Walker v. Ridgeview Constr. Co.*, 316 Ill. App. 3d 592, 595-596 (1st Dist. 2000).

As the Court noted in its September 16, 2014, Order granting summary judgment in favor of Marquis, GATX terminated the Lease Agreement as set forth under the express terms of the contract and therefore MRE cannot show the GATX was in breach of the Lease Agreement. It is undisputed that Article 13 of the Lease provided for Remedies:

> If [MRE] shall fail to perform any of its obligations under this Agreement, GATX may (a) without notice or demand immediately terminate this Agreement with respect to any or all of the cars covered hereunder and thereafter take possession of any or all such cars; or (b) upon seven (7) days prior written notice to [MRE], change the term of this Agreement to a month-to-month term, subject to termination thereafter upon ten (10) days prior written notice from either party to the other, or (c) permit [MRE] to retain possession of any or all cars under this Agreement as the same may continue in force provided [MRE] shall, within five (5) days after written notice from GATX cure any and all defaults under this Agreement, and shall also, within said five (5) day period, provide to GATX adequate assurances (including

7

collateral security) of future full performance of this Agreement, so that all amounts due hereunder shall promptly be paid by [MRE] to GATX when they shall become due, and that all covenants hereunder shall promptly performed by it in the manner provided herein.

It is undisputed that pursuant to the Lease agreement between GATX and MRE that: "The cars shall be used exclusively in the service of [MRE], and [MRE] shall not furnish, assign or subcontract any car, or make any transfer or assignment of this agreement, without GATX's prior written consent…" (Dkt. 93-2). . It is also undisputed that MRE did not obtain written consent from GATX to sublease the railcars to Marquis or to assign its rights under the Lease Agreement to Marquis. The Lease also required MRE to make payments to GATX within 15 days of the monthly invoice. MRE admits that it did not make payments to GATX under the Lease Agreement beginning in January 2012 until GATX gave notice of termination in August 2012. The record demonstrates that GATX invoiced MRE's account monthly until termination of the Lease. Therefore, MRE failed to perform its obligations under the express terms of Lease Agreement and GATX was entitled to terminate the Lease Agreement without notice or demand. *See Central States, Se. & Sw. Areas Pension Fund v. Kroger Co.*, 226 F.3d 903, 910 (7th Cir. 2000) (when a contract is unambiguous, the court may declare its meaning as a matter of law).

MRE's argument that GATX breached the Lease by waiving strict compliance and then retracting it without notice is also unavailing. The express terms of the agreement prohibit waiver without a writing signed by both parties. Moreover, a vendor may "cut a buyer some slack" without waiving compliance with the terms of the agreement. *See In re Elcona Homes Corp.,* 863 F.2d 483, 487 (7th Cir. 1988); *Ryder v. Bank of Hickory Hills,* 146 Ill. 2d 98, 585 N.E. 2d 46, 165 Ill. Dec. 650 (1991). As one court put it, "The buyer may enjoy the extra breathing room, but when the vendor's patience runs out the buyer must pay up or face the consequences." *Sethness-Greenleaf, Inc. v. Green River Corp.,* 65 F.3d 64, 67 (7th Cir. 1995). While this principle does not mean that a forgiving vender cannot waive particular defaults, where like here, the vendor provides notice of its intent to adopt a hard

line, there is no waiver. *See id.* This Court finds that GATX did not waive strict compliance by allowing MRE some forbearance on its payments while it continued to invoice MRE and MRE repeatedly assured GATX that it would remit payment and bring its account current as soon as possible. Accordingly, GATX is entitled to summary judgment on Count I.

   *2. Tortious Interference*

GATX moves for summary judgment on Count II for tortious interference with a contractual relationship, arguing that MRE did not have a reasonable expectancy of assigning the Lease, GATX did not unjustifiably interfere with MRE's assignment by terminating the Lease, and MRE has not incurred any damages as a result of GATX's conduct. Under Illinois law, a claim for tortious interference with contract requires: "(1) the existence of a valid and enforceable contract between the plaintiff and another, (2) the defendants' awareness of the contract, (3) the defendants' intentional and unjustified inducement of a breach of the contract, (4) subsequent breach of the contract caused by the defendants' wrongful conduct, and (5) damages." *Dopkeen v. Whitaker*, 399 Ill. App. 3d 682, 926 N.E.2d 794, 797 (1st Dist. 2010).

Here, the undisputed facts demonstrate that MRE could not have had a valid and enforceable contract with Marquis. This Court addressed this issue in some depth in its September 16, 2014, Order granting summary judgment in favor of Marquis. MRE admits that its agreement with GATX prohibited any assignment or sublease of the railcars without prior written consent from GATX. MRE does not dispute that GATX never provided written consent to the sublease prior to MRE entering an agreement with Marquis. Without such consent, MRE and Marquis did not have a valid and enforceable contract because MRE did not have the authority to enter the agreement. The undisputed facts also demonstrate that GATX did not become aware of the sublease or proposed assignment between MRE and Marquis until late July 2012, when it had already put MRE on notice that MRE was in default on the Lease agreement with GATX. The fact

that GATX entered a Lease agreement with Marquis contemporaneous to its termination of the Lease agreement with MRE does not support a claim of tortious interference. Accordingly, GATX is entitled to summary judgment on Count II.

**Conclusion**

Based on the foregoing discussion, GATX's motion for summary judgment on Counts I and II is granted.

IT IS SO ORDERED.

Date: October 20, 2014

Entered: _____

United States District Judge